UNITED STATES OF AMERICA
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CONCRETE PLACEMENT, INC., and CHEROKEE CONSTRUCTION, INC. Plaintiff | : | |
| v. | : | C.A. No. 05-480S |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant | : | |

**MEMORANDUM OF DEFENDANT ST. PAUL FIRE & MARINE INSURANCE COMPANY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant St. Paul Fire & Marine Insurance Company ("St. Paul") respectfully submits this Memorandum of Law in support of its Fed. R. Civ. P. 56(b) Motion for Partial Summary Judgment.

## Introduction

Pursuant to Fed. R. Civ. P. 56(b) and 40 U.S.C. § 3133(b)(2)[1], St. Paul hereby respectfully requests this Court to grant it summary judgment as to Count III of the Complaint, for the failure of Plaintiff Cherokee Construction, Inc. ("Cherokee") to satisfy the statutory condition precedent provided for in 40 U.S.C. § 3133(b)(2) for the filing of a civil claim against St. Paul under 40 U.S.C. §§ 3131-3134 (the "Miller Act"). Section 3133(b)(2) requires that a second-tier subcontractor that is not in direct contractual privity with a bonded contractor on a federally funded construction project serve written notice of its intention to assert a claim on that bonded contractor within ninety days from the date on which the subcontractor last performed

[1] Please note that the statute presently known as 40 U.S.C. § 3133(b)(2) was formerly known as 40 U.S.C.A. § 270(b), prior to the September 30, 2005 amendment and renumbering of Title 40 of the United States Code. Other than references to other renumbered sections, the text of 40 U.S.C. remains unchanged from its previous form.

work on the subject project. Cherokee did not satisfy this statutory requirement, and with there being no genuine issue of material fact suggesting otherwise, summary judgment should be granted in favor of St. Paul on Count III of the Complaint.

**Facts**

40 U.S.C. §§ 3131 – 3134 is commonly known as the "Miller Act," and generally requires the posting of payment and performance bonds by general contractors on federal construction projects. St. Paul, as surety, issued to The Whiting-Turner Contracting Company ("Whiting-Turner"), as principal, payment and performance bonds for the United States Navy's "Consolidated Fire, Police, and Security Building, North Gate and Gate No. 2" project, located in Newport, Rhode Island (the "Combo Fire Project"), pursuant to 40 U.S.C § 3131(b). See Affidavit of Christopher Martinson at ¶ 4, **Exhibit A**, attached hereto. Whiting-Turner acted as the Construction Manager on the Combo Fire Project. See id. at ¶ 3.

Cherokee had a direct contractual relationship with one of Whiting-Turner's subcontractors, Capital City Concrete, Inc. ("Cap City"), on the Combo Fire Project. See **Exhibit A** at ¶¶ 5 and 7. Whiting-Turner and Cherokee did not enter into any contracts, whether written or oral, express or implied, regarding the Combo Fire Project, and Cherokee did not provide any materials or labor directly to Whiting-Turner on the Combo Fire Project at any time. See id. at ¶ 6.

Therefore, because Cherokee was a second-tier subcontractor to Whiting-Turner on a federal construction project where the Miller Act applied, it needed to satisfy the written notice requirement of 40 U.S.C. § 3133(b)(2) in order to assert a claim against Whiting-Turner's payment bond. Under 40 U.S.C. § 3133(b)(2), a subcontractor not in direct contractual privity with a bonded contractor has ninety days from its last day of performance on the subject project

to serve written notice of its intent to assert a claim against the bonded contractor's payment bond. Here, Cherokee has stipulated that its final day of work on the Combo Fire Project was November 19, 2004. See Letter from Charles Kirwan dated January 17, 2007, **Exhibit B**, attached hereto. Cherokee failed to serve written notice of its intent to assert a Miller Act claim on or before February 17, 2005, the ninetieth day following November 19, 2004. See Defendant's Rule 34 Request for the Production of Documents at p. 4 (Request No. 3), **Exhibit C;** January 9, 2007 email from Charles S. Kirwan to Michael D. Williams in response to Request No. 3 of Defendant's Rule 34 Request for the Production of Documents, with referenced documents attached, **Exhibit D;** and March 2, 2005 Fax Transmittal from Joe Ricci to Andrew Natale, **Exhibit E**. Cherokee waited until March 2, 2005 to first provide informal written notice to Whiting-Turner of its intent to assert a Miller Act claim, in the form of a fax transmittal memorandum. See **Exhibit C** at p. 4 (Request No. 3), **Exhibit D**, and **Exhibit E**. Further, Cherokee delayed until April 13, 2005 to finally serve a formal written notice upon Whiting-Turner of its intent to assert a Miller Act claim via the certified mail, return receipt requested method required by 40 U.S.C. § 3133(b)(2). See April 13, 2005 letter from Charles S. Kirwan to Andrew Natale, with attachments, **Exhibit F**.

Because Cherokee cannot establish timely written notice, it seeks to somehow establish compliance with the Miller Act's written notice requirements through other means, namely alleged verbal notice. Cherokee's Vice President Louis Fresolone testified at deposition[2] that he had a conversation with Whiting-Turner employee Andrew Natale in January, 2005, in which he asked Mr. Natale for bond information and informed Mr. Natale that Cherokee was not "being paid" on the project. Excerpts from Deposition of Louis Fresolone at pp. 12-14, **Exhibit G**,

attached hereto. However, Mr. Fresolone also testified that during that January 2005 conversation with Mr. Natale, he did not inform Mr. Natale that Cherokee was contemplating asserting a direct claim against Whiting-Turner or St. Paul. Id. at p. 14. Mr. Fresolone was also unable to specifically recall at deposition exactly when he allegedly verbally informed Whiting-Turner that Cherokee was going to sue Whiting-Turner or St. Paul, being unsure about whether that alleged verbal notification occurred in February or March of 2005. Id. at p. 25. Further, Mr. Fresolone could not recall specific details of his March 2005 conversations with Whiting-Turner personnel. See id. at pp. 24-25 (starting with line 11 on p. 24, and continuing through line 18 of p. 25). Overall, Mr. Fresolone was unable to testify to the fact that Cherokee provided any kind of notice, whether verbal or written, of its intention to sue Whiting-Turner or St. Paul, prior to the statutory deadline of February 17, 2005. See id. at pp. 14 (lines 8-12) and 24-25 (starting on line 25 on p. 24, and continuing through line 14 on p 25).

**Legal Standard**

Fed. R. Civ. P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986). Moreover, the non-moving party may not rest upon mere allegations or denials in its pleadings, rather it "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990). A factual dispute is "genuine" under this Rule only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

[2] Mr. Fresolone testified at a January 11, 2007 deposition as Cherokee's Rule 30(b)(6) designee on the limited topic

248 (1986). However, there is no "genuine issue" where the evidence offered in support of a material fact is "a scintilla," "merely colorable" or "not significantly probative." Id. at 250–51.

**Argument**

Even with the facts underlying Count III from the Complaint interpreted in a light most favorable to Cherokee, no issue of material fact exists as to whether Cherokee failed to satisfy the Miller Act ninety day written notice requirement, a strict condition precedent to asserting that claim.

40 U.S.C. § 3133(b)(2) (formerly 40 U.S.C.A. § 270(b)) provides:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. The notice shall be served –
>
> (A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence; or
>
> (B) in any manner in which the United States marshal of the district in which the public improvement is situated by law may serve summons.

In nearly every federal jurisdiction in this nation, it is well-settled law that compliance with the ninety day written notice requirement of 40 U.S.C. § 3133(b)(2) is a strict condition precedent to asserting a civil claim under the Miller Act. See, e.g., Fleisher Eng. & Constr. Co. v. Hallenbeck, 311 U.S. 15, 18 (1940) ("a requirement which is clearly made a condition precedent to the right to sue [under the Miller Act] must be given effect"); John D. Ahern Co., Inc. v. J.F. White Contracting Co., 649 F.2d 29, 31 (1st Cir. 1981) ("The requirement that notice

---

of Cherokee's satisfaction of the Miller Act written notice requirement.

must be given to the principal contractor within the ninety-day period is mandatory and is a strict condition precedent to the existence of any right of action upon the principal contractor's bond"); T.F. Scholes, Inc. v. H.W. Moore Equip. Co., 295 F.2d 366, 369 (10th Cir. 1961); Cooley v. Barten & Wood, 249 F.2d 912, 914 (1st Cir. 1957) ("It is essential for the purpose of the notice that it be given within a certain period. Therefore the giving of the notice within the ninety day period is a condition precedent of the plaintiff's right of action under the Miller Act."); Betts v. Continental Casualty Co., 230 F.Supp. 557, 558 (W.D. Pa. 1964) ("The giving of such notice is mandatory and a strict condition precedent to the existence of any right of action upon to contractor's bond. Where no such notice has been given and served upon the contractor, recovery must be denied."). The four mandatory requirements for notice under 40 U.S.C. § 3133(b)(2) are: (1) notice of a claim must be given by the second-tier subcontractor to the bonded contractor within ninety days of the claimant's last day of performance on the subject project, (2) the presentation of the claim must be in written form, (3) the notice must state with "substantial accuracy" the amount claimed, and (4) the notice must state to whom the claimant directly provided its services. See, e.g., American Radiator & Standard Sanitary Corporation v. Northwestern Engineering Co., 122 F.2d 600, 602 (8th Cir. 1941). "The purpose of the notice requirement is to establish a time after which the principal contractor can pay its subcontractor, certain that it will not be exposed subsequently to the claims of those who have supplied labor and materials to the subcontractor." Ahern, 649 F.2d at 31, citing Bowden v. United States, 239 F.2d 572, 577-8 (9th Cir. 1956).

It is undisputed that Cherokee did not make a written presentation of its claim to Whiting-Turner within ninety days of its last day of performance on the Combo Fire Project, much less a written notice that set forth Cherokee's claim with "substantial accuracy." Even

with all questions of fact weighed in Cherokee's favor, the only form of notice that Cherokee can be said to have provided Whiting-Turner is one of a general and verbal nature. However, according to Mr. Fresolone's testimony at deposition, he was unable to confirm that Cherokee provided even that alleged verbal notice to Whiting-Turner during the ninety day notice period. See **Exhibit G** at pp. 14 and 25. Cherokee's deficient notice to Whiting-Turner or St. Paul of its intent to assert a claim under the Miller Act falls well short of the Miller Act's strict written notice requirements, and therefore, Cherokee cannot now assert a claim against St. Paul under that Act.

Although it likely will attempt to rely upon alleged instances of incomplete and untimely verbal communication with Whiting-Turner in its attempt to defeat this Motion for Partial Summary Judgment, Cherokee cannot escape the requirement explicitly recognized by several courts in interpreting the Miller Act written notice requirement – that the notice given under it must, in fact, be written. See, e.g., Fleisher, 311 U.S. at 19; American Radiator, 122 F.2d at 602-03 (8th Cir. 1941) ("We are unable . . . to arrive at any other conclusion than that the giving of a written notice must be held to be mandatory, as a strict condition precedent to the existence of any right of action."); Chicago Rigging Co. v. UniRoyal Chemical Co., Inc., 718 F. Supp. 696, 699 (N.D. Ill. 1989); Davison v. York Elec. Constr. Co., 184 F.Supp. 520, 522-23 (D.N.D. 1960); Bruce Co., Inc. v. Fraser Constr. Co., Inc., 87 F.Supp. 1, 4 (W.D. Ar. 1949) ("the presentation of a claim . . . is required to be made in written form."). Cherokee has completely failed to demonstrate that it provided written notice to Whiting-Turner within the ninety day statutory notice period, and as a result it has failed to satisfy a strict condition precedent to its ability to assert a civil claim against St. Paul under the Miller Act.

Cherokee's counsel has already informed St. Paul's counsel and the Court that Cherokee intends to rely upon Water Works Supply Corp. v. George Hyman Constr. Co., 131 F.3d 28 (1st Cir. 1997) in its objection to this Motion. Although the Water Works court held that "[c]ommunications sent to the general contractor detailing the supplier's claim against the subcontractor may, for example, be supplemented by oral and other written exchanges" in order to satisfy the Miller Act written notice requirement, it limited this maxim by also holding that the oral and written exchanges must "make it unambiguously clear" that the second-tier subcontractor is seeking payment from the general contractor. Id. at 33, citing Consol. Elec. Distribs., Inc. v. Altech, Inc., 929 F.2d 1089, 1092 (5th Cir. 1991). Mr. Fresolone was unable to confirm that he informed any Whiting-Turner employee of Cherokee's intent to sue Whiting-Turner prior to February 17, 2005, thereby preventing Cherokee's supposed verbal notice to satisfy the "unambiguously clear" standard adopted by the First Circuit in Water Works. See **Exhibit E** at pp. 14 and 25.

The facts in Water Works are also distinguishable from the present action because there the claimant forwarded a demand letter, formerly sent to the first-tier subcontractor, to the general contractor *within* the 90 day Miller Act written notice period, and requested a copy of the general contractor's bond "for the express purpose of filing a bond claim." Id. at 33. Nothing remotely of this nature occurred in the case at bar – Cherokee (a) failed to present a demand letter (or forward a demand letter that it previously sent to Cap City) to Whiting-Turner within the ninety day notice period; (b) did not request from Whiting-Turner bond information *for the purpose of filing a bond claim;* and (c) failed to take any other action within the statutory ninety day notice period to make it unambiguously clear to either Whiting-Turner that it intended to assert a claim under the Miller Act. See **Exhibit G** at pp. 12-17 and 24-25. Therefore, Water

Works is distinguishable from the case at bar, and Cherokee's reliance upon it is misplaced. If anything, the "ambiguously clear" standard announced by the First Circuit in Water Works further supports this Court's grant of St. Paul's Motion.

**Conclusion**

St. Paul respectfully requests that this Honorable Court grant its Motion for Partial Summary Judgment as to Count III of the Complaint for Cherokee's failure to comply with the written notice requirement of 40 U.S.C. § 3133(b)(2).

Respectfully submitted,
St. Paul Fire & Marine
Insurance Company,
By its Attorneys,

/s/ Michael D. Williams
Christopher C. Whitney (#3261)
cwhitney@lmkbw.com
Michael D. Williams (#6702)
mwilliams@lmkbw.com
Little Medeiros Kinder
Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903
T: (401) 272-8080

**CERTIFICATION**

I, Michael D. Williams, hereby certify that on the 23rd day of May, 2007, I caused to be emailed a copy of this Memorandum to the attention of Charles S. Kirwan, Esq.

/s/ Michael D. Williams

f:\mdw\st. paul\whiting - turner\cherokee action\memo in support of motion for partial summary judgment(3).doc