UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA
FOR THE USE AND BENEFIT OF
CONCRETE PLACEMENT, INC. and
CHEROKEE CONSTRUCTION, INC.
Plaintiffs

v. C.A. No. 05-480S

ST. PAUL FIRE & MARINE INS. CO.
Defendant

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS
AND STATEMENT OF DISPUTED FACTS

Plaintiff Cherokee Construction Inc. ("Cherokee") respectfully submits its Statement of Undisputed Facts and its Statement of Disputed Facts, in support of its objection to the pro forma Motion for Partial Summary Judgment filed on behalf of Defendant St. Paul Fire & Marine Insurance Company ("St. Paul") with respect to Count III of Cherokee's complaint. Count III is Cherokee's Miller Act bond claim cause of action seeking recovery of $33,284.20, plus prejudgment interest, attorney's fees and costs. Cherokee's Statement of Undisputed Facts and its Statement of Disputed Facts rely upon the attached Affidavit of Louis Fresolone, Vice President of Cherokee Construction, Inc. (hereinafter Fresolone Affidavit) and its supporting exhibits. In addition, Plaintiff's Statement of Undisputed Facts also relies upon certain undisputed facts admitted and recited in Defendant's Statement of Undisputed Facts.

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

1. As admitted in Defendant's Statement of Undisputed Facts (hereinafter "Def.'s Statement") at ¶ 1, St. Paul, as surety, issued to Whiting-Turner, as principal, payment and performance bonds for the United States Navy's "Consolidated Fire, Police, and Security

Building, North Gate and Gate No. 2" project, located in Newport, Rhode Island (the "Combo Fire Project"), pursuant to 40 U.S.C § 3131(b). The Fresolone Affidavit refers to the Combo Fire Project as the Combo Fire Station and Gates Project (hereinafter the "Combo Fire Project").

2. As admitted in Def.'s Statement at ¶ 2, Whiting-Turner acted as the bonded Construction Manager on the Combo Fire Project. Fresolone Affidavit ¶ 5.

3. As admitted in Def.'s Statement at ¶ 3, Cherokee had a direct contractual relationship with one of Whiting-Turner's subcontractors, Capital City Concrete, Inc. ("Cap City") on the Combo Fire Project. Fresolone Affidavit ¶ 5.

4. As admitted in Def.'s Statement at ¶ 6, Cherokee's final day of work on the Combo Fire Project was November 19, 2004. Fresolone Affidavit ¶ 4.

5. As argued in Def.'s Statement at ¶ 7, with November 19, 2004 standing as Cherokee's final work day of on the Combo Fire Projects, the ninetieth day thereafter for Miller Act notice computation purposes was February 17, 2005. Fresolone Affidavit ¶ 16.

6. On or about November 30, 2004, Mr. Fresolone prepared Cherokee's invoice to Capital City Concrete in the amount of $33,284.20 and sought payment from Capital City Concrete for the construction services that Cherokee supplied during November 2004 to complete Cherokee's specified work on the Combo Fire Project. Fresolone Affidavit ¶ 6.

7. Because Capital City Concrete did not promptly pay Cherokee's invoice dated November 30, 2004, Mr. Fresolone visited Whiting-Turner's on-site office, an office trailer, and, on a number of occasions in January and February 2005, Mr. Fresolone met in person with Whiting-Turner's on-site representative, Andrew Natale, who was Whiting-Turner's assistant project manager. Fresolone Affidavit ¶ 7.

8. As acknowledged in Def.'s Statement at ¶ 10, it is uncontroverted on this record that during January 2005, Mr. Fresolone put Whiting-Turner on notice that Cherokee had not been paid and that Cherokee was seeking information regarding the payment bond that Mr. Fresolone presumed existed for this Navy Base Contract. Fresolone Affidavit ¶ 8. Cherokee's Vice President Louis Fresolone testified at deposition that he had a conversation with Whiting-Turner employee Andrew Natale in January, 2005, in which he asked Mr. Natale for bond information and informed Mr. Natale that Cherokee was not "being paid" on the project. See Excerpts from Deposition of Louis Fresolone at 12:2 – 14:12 (page: line), Exhibit 4 attached to the Fresolone Affidavit (hereinafter Fresolone Dep.).

9. Mr. Fresolone was away on an out-of-state vacation during the period from on or about the afternoon of Wednesday, February 16, 2005 through Saturday, February 26, 2005 and during that period Mr. Fresolone did not contact anyone from Whiting-Turner about payment of the unpaid invoice for the Combo Fire Project. Fresolone Affidavit ¶ 9.

10. In a number of different conversations during February 2005 prior to Mr. Fresolone's February 16-26, 2005 vacation, and therefore before the February 17, 2005 ninety-day Miller Act claim notification deadline. Mr. Fresolone made it clear to Mr. Natale that Cherokee wanted the payment bonding information for the project and that Cherokee intended to secure payment of the unpaid invoice for the Combo Fire Project from Whiting-Turner or the payment bond, if payment was not forthcoming from Capital City Concrete. Fresolone Affidavit ¶ 10.

11. In at least one of Mr. Fresolone's meetings with Mr. Natale during February 2005 before Mr. Fresolone's February 16-26, 2005 vacation, during discussion of Cherokee's unpaid invoice, Mr. Fresolone showed Mr. Natale Cherokee's unpaid invoice to Capital City Concrete for

the Combo Fire Project. Fresolone Affidavit ¶ 11. Mr. Fresolone does not recall if Mr. Natale thereupon made a copy of Cherokee's unpaid invoice or not. Fresolone Affidavit ¶ 11.

12. On at least one of Mr. Fresolone's visits to the Whiting-Turner office trailer during February 2005 before Mr. Fresolone's February 16-26, 2005 vacation, and Mr. Natale introduced Mr. Fresolone to Matthew Belcher at which time they discussed Mr. Fresolone's efforts to secure payment of Cherokee's unpaid invoice on the Combo Fire Project from Whiting-Turner or the payment bond, if payment was not forthcoming from Capital City Concrete. Fresolone Affidavit ¶ 12. At that time, Whiting-Turner's representatives seemed to accept Mr. Fresolone's statements concerning Cherokee's unpaid invoice to Capital City Concrete for the Combo Fire Project and specifically informed Mr. Fresolone that it was Whiting-Turner's intention to withhold sufficient funds from progress payments then owed to Capital City Concrete to make sure that all of Capital City Concrete's subcontractors, including Cherokee, were properly paid. Fresolone Affidavit ¶ 12. Attached to the Fresolone Affidavit as Exhibit 1 are Whiting-Turner document nos. WTCC 0031-0032 produced in the course of discovery in this action which is a Whiting-Turner accounting form entitled "Accounts Payable – Special Instructions" dated March 3, 2005 that bears the hand written notation: "Capital City Concrete – December 2004 Invoice, Hold by W-T (Whiting-Turner) for Cherokee Payment Issue" together with the subject Capital City Concrete – December 2004 Invoice dated December 30, 2004. Fresolone Affidavit ¶ 12. This Whiting-Turner accounting form stands as independent proof, confirming Mr. Fresolone's sworn affidavit averments, that Cherokee timely and fully satisfied all applicable Miller Act notice requirements. These documents also conclusively establish Cherokee's full satisfaction of all applicable Miller Act notice requirements by virtue of the fact that Cherokee acted in a timely manner that allowed Whiting-Turner to withhold from payment to Capital City Concrete the $39,900.83 that Capital

City Concrete invoiced to Whiting-Turner on December 30, 2004 for the work duly completed by Cherokee on the Combo Fire Project during November 2004, whereby consistent with all Miller Act notice requirements Whiting-Turner preserved the payment status quo pending resolutions of any pertinent payment disputes. See Exhibit 1, page two, attached to the Fresolone Affidavit.

13. As produced during the discovery process in this litigation, Whiting-Turner's letter to Capital City Concrete dated February 20, 2005 (Whiting-Turner document no. WTCC 0036) confirms and describes some of the efforts taken by Mr. Fresolone during February 2005 before his February 16-26, 2005 vacation, by which efforts Cherokee tried to secure payment for Cherokee's unpaid invoice from Whiting-Turner or the payment bond, if payment was not forthcoming from Capital City Concrete. Whiting-Turner document no. WTCC 0036 is attached to the Fresolone Affidavit as Exhibit 2. Fresolone Affidavit ¶ 13.

14. The letter from Whiting-Turner to Capital City Concrete dated February 20, 2005 in part states: "On Wednesday February 2, 2005 and two times thereafter, Louis Freselone [sic], Vice President of Cherokee Construction (subcontractor of Capital City Concrete), approached The Whiting-Turner Contracting Company regarding payment for work performed in November 2004. Mr. Freselone [sic] claimed that no payment has been made for a $35,000.00 invoice submitted at the end of November 2004… Payments will not be made to Capital City Concrete until proper closure is made to this issue. It is Whiting-Turner's understanding that Cherokee Construction will no longer perform work under this contract. If this is the case please provide a final release of liens from this subcontractor in a timely fashion." See Whiting-Turner document no. WTCC 0036, attached to the Fresolone Affidavit as Exhibit 2. Fresolone Affidavit ¶ 14. Mr. Fresolone was away on an out-of-state vacation during the period from on or about the afternoon

of Wednesday, February 16, 2005 through Saturday, February 26, 2005, and did not contact anyone from Whiting-Turner about payment of the unpaid invoice for the Combo Fire Project during that period. Accordingly, all of Mr. Fresolone's communications with Whiting-Turner personnel as described in the letter from Whiting-Turner to Capital City Concrete dated February 20, 2005 necessarily occurred before the ninety-day, February 17, 2005, Miller Act claim notification deadline. Fresolone Affidavit ¶ 9.

15. Because Cherokee's invoice for the Combo Fire Project in the amount of $33,284.20 remains unpaid, no representative of Cherokee ever signed a final release of liens, a release of liens, a partial waiver and release, or any other waiver or release of any description regarding the Combo Fire Project. Fresolone Affidavit ¶ 15.

16. Whiting-Turner's letter dated February 20, 2005 plainly confirms that Mr. Fresolone's communications with Whiting-Turner during February 2005 before Mr. Fresolone's February 16-26, 2005 vacation successfully put Whiting-Turner on notice before February 17, 2005 that Cherokee intended to secure payment from Whiting-Turner or the payment bond, if payment was not forthcoming from Capital City Concrete for the work supplied by Cherokee regarding the Combo Fire Project. See Whiting-Turner document no. WTCC 0036, attached to the Fresolone Affidavit as Exhibit 2. Fresolone Affidavit ¶ 16.

17. Despite the verbal requests that Mr. Fresolone made to Whiting-Turner for payment bond information before Mr. Fresolone's February 16-26, 2005 vacation, and despite the written request that Mr. Fresolone made for bond information on March 2, 2005, Whiting-Turner did not provide Cherokee the requested bond until on or about March 14, 2005. In this regard, note the following statement included in Whiting-Turner's letter to Capital City Concrete dated March 2, 2005 (see Whiting-Turner document no. WTCC 0040): "Whiting-Turner is

legally bound by the Miller Act to provide this bond information to Cherokee Construction in a timely fashion upon written request." Whiting-Turner document no. WTCC 0040 is attached here to as Exhibit 3. Fresolone Affidavit ¶ 17.

18. The Defendant's partial summary judgment papers materially mischaracterize and inappropriately try to take Mr. Fresolone's deposition testimony out of context regarding the efforts that he took on behalf of Cherokee during February 2005 before his February 16-26, 2005 vacation to put Whiting-Turner on notice that Cherokee intended to secure payment from Whiting-Turner or the payment bond, if payment was not forthcoming from Capital City Concrete. See ¶¶ 12-14 of Def.'s Statement as specifically disputed below at length. In Mr. Fresolone's deposition testimony he confirmed that in January 2005, Cherokee put Whiting-Turner on notice that Cherokee had not been paid and that Cherokee was seeking information regarding the payment bond that Mr. Fresolone presumed existed for this Navy Base Contract. See Excerpts from Deposition of Louis Fresolone at 12:3 – 14:12 (page: line), Exhibit 4 attached to the Fresolone Affidavit (hereinafter Fresolone Dep.). Immediately thereafter, Mr. Fresolone was asked:

> Q After that [Mr. Fresolone's communications with Whiting-Turner in January 2005 about getting paid and securing information about the bond]. It's my assumption that you testified that that was the first time that you provided notice that you had a claim under the Miller Act. I want to know if there were subsequent conversations that you addressed that topic?
>
> A. Yes.
>
> Q. And when did those other conversations occur?
>
> A. I believe it was in February.
>
> Q. Of 2005?
>
> A. Correct.

See Exhibit 4, Fresolone Dep. 14:20-15:4. Fresolone Affidavit ¶ 18.

19. Then regarding Mr. Fresolone's communications with Whiting-Turner in February 2005, he testified that there were far too many conversations to recall everything that was said during February 2005 between Mr. Fresolone and Whiting-Turner personnel:

> Q. Do you know how many different conversations you had in February of '05 with Whiting-Turner personnel?
>
> A. That's tough, that's a tough question because I was involved with the Gates project as a second tier sub, and at this time in February we were negotiating a contractual deal directly, doing work for Whiting-Turner for the child day care center. So, for me to give you a specific amount of days, Mike, I really couldn't because there were days I was speaking on different issues.

See Exhibit 4, Fresolone Dep. 15:21-16:6. Fresolone Affidavit ¶ 19.

20. Review of Mr. Fresolone's deposition transcript (see Exhibit 4, Fresolone Dep. 16:14-18:11) confirms that after the above-quoted question, rather than exhaust the topic of all of the communications that Mr. Fresolone had with Whiting-Turner during February 2005, during his brief deposition Mr. Fresolone was asked a total of only two questions about conversations that he recalled with respect to his February 2005 communications with Whiting-Turner personnel regarding Cherokee's efforts to secure payment from Whiting-Turner or the payment bond, if payment was not forthcoming from Capital City Concrete for Cherokee's unpaid invoice. Fresolone Affidavit ¶ 20. It should be noted that Mr. Fresolone's deposition lasted a total of only forty-six (46) minutes (see deposition cover page and final page, Exhibit 4, Fresolone Dep. 35:25). During his brief deposition, Mr. Fresolone testified regarding two specific conversations that occurred during February 2005, but he was not asked if he recalled any other specific conversations that occurred during February 2005 with respect to Cherokee's efforts to secure payment for Cherokee's unpaid invoice from Whiting-Turner or the payment bond. See Exhibit 4, Fresolone Dep. 16:14-18:11. Fresolone Affidavit ¶ 20. At no time during Mr. Fresolone's deposition was he asked to point out any additional information that he deemed important; nor was

he asked any similar "catch-all" question regarding his communications in February 2005 prior to February 17, 2005 or otherwise. Mr. Fresolone's deposition did not include questions about any of the following Miller Act events that occurred during February 2005 before Mr. Fresolone's February 16-26, 2005 vacation that stand on this record as wholly uncontroverted facts:

a. He was not asked if he provided Whiting-Turner personnel a copy of the unpaid invoice on or before February 17, 2005. Fresolone Affidavit ¶ 20.

b. He was not asked if he had requested bond information again in February 2005 on or before February 17, 2005 after Cherokee's initial requests in January 2005. Fresolone Affidavit ¶ 20.

c. He was not asked what he had communicated to Whiting-Turner personnel during February 2005, on or before February 17, 2005, about Cherokee's intention to secure payment from Whiting-Turner or the payment bond if payment was not forthcoming from Capital City Concrete. Fresolone Affidavit ¶ 20.

d. And even though the letter from Whiting-Turner to Capital City Concrete dated February 20, 2005 states: "On Wednesday February 2, 2005 and two times thereafter, Louis Freselone [sic], Vice President of Cherokee Construction (subcontractor of Capital City Concrete), approached The Whiting-Turner Contracting Company regarding payment for work performed in November 2004", Mr. Fresolone was not asked any specific questions about what happened on February 2, 2005, nor was he asked any questions about the two (or more) other occasions during February 2005 before he left for vacation on February 16, 2005 in which Mr. Fresolone communicated with Whiting-Turner personnel regarding payment for work Cherokee performed on the Combo Fire Project in November 2004. See Whiting-Turner document no. WTCC 0036, attached to the Fresolone Affidavit as Exhibit 2. Fresolone Affidavit ¶ 20.

21. Later in Mr. Fresolone's deposition, he was shown Cherokee's attorney's letter to Whiting-Turner dated March 25, 2005. See Exhibit 4, Fresolone Dep. 22:8-25:18. Referencing that exhibit, Mr. Fresolone was then asked if before the date of that letter, March 25, 2005, what communications he had had with Whiting-Turner personnel in March 2005 (Fresolone Dep. 24:11-20), and did he verbally inform Whiting-Turner that Cherokee was going to bring a lawsuit against either Whiting-Turner or their bonding company. (Fresolone Dep. 24:25-25:18). In response, recalling that Cherokee had provided Whiting-Turner sufficient time to get Cherokee paid in January and February, Mr. Fresolone testified that it was probably in February or March that he provided verbal notice of Cherokee's intent to bring a bond claim suit, and he admitted that was not sure if he did so during February or March. (Fresolone Dep. 24:25-25:18). Fresolone Affidavit ¶ 21. In this connection, Mr. Fresolone was only questioned about the communications that he had regarding the filing of a lawsuit and he was not further questioned about the communications that he had with Whiting-Turner personnel during February 2005 before his February 16-26, 2005 vacation regarding Cherokee's efforts to secure payment from Whiting-Turner or the payment bond if payment was not forthcoming from Capital City Concrete for the work supplied by Cherokee regarding the Combo Fire Project. Fresolone Affidavit ¶ 21.

22. To assure that Cherokee obtained the bond information from Whiting-Turner first requested in January 2005, Cherokee faxed to Mr. Natale the letter dated March 2, 2005 attached to the Fresolone Affidavit as Exhibit 5. Thereafter, to further confirm notice to Whiting-Turner, Cherokee retained an attorney who caused two notices to be sent to Whiting-Turner dated March 25, 2005 and April 13, 2005. Whiting-Turner's copy of the letter dated March 25, 2005 confirms that Whiting-Turner received that letter by fax on March 25, 2005. See Defendant's Exhibit D Whiting-Turner document no. WTCC 0041-0043. Whiting-Turner's copy of the letter dated

April 13, 2005 that was delivered to Whiting-Turner via certified mail return receipt requested appears at Defendant's Exhibit D, Whiting-Turner document nos. WTCC 0067-0070. Fresolone Affidavit ¶ 22.

PLAINTIFF'S STATEMENT OF DISPUTED FACTS

1. ¶ 7 of Def.'s Statement is disputed. In fact it is undisputed that Cherokee's Vice President Fresolone provided the necessary Miller Act claim notice to Whiting Turner before February 17, 2005, the ninetieth day following November 19, 2004, Cherokee's last day of work on the Combo Fire Project. Fresolone Affidavit ¶¶ 7-17, 20. The cited Fresolone Affidavit averments (Fresolone Affidavit ¶¶ 7-17, 20) are confirmed by the letter from Whiting-Turner to Capital City Concrete dated February 20, 2005: "On Wednesday February 2, 2005 and two times thereafter, Louis Freselone [sic], Vice President of Cherokee Construction (subcontractor of Capital City Concrete), approached The Whiting-Turner Contracting Company regarding payment for work performed in November 2004. Mr. Freselone [sic] claimed that no payment has been made for a $35,000.00 invoice submitted at the end of November 2004… Payments will not be made to Capital City Concrete until proper closure is made to this issue." Fresolone Affidavit Fresolone Affidavit ¶¶ 12-16.

2. ¶ 8 of Def.'s Statement is disputed. In fact it is undisputed on this record that in at least one of Mr. Fresolone's meetings with Mr. Natale during February 2005 and on or before February 17, 2005, during discussion of Cherokee's unpaid invoice, Mr. Fresolone showed Mr. Natale Cherokee's unpaid invoice to Capital City Concrete for the Combo Fire Project. Fresolone Affidavit ¶ 11.

3. ¶ 9 of Def.'s Statement is disputed because it requires the clarification that the Miller Act notice from Cherokee's counsel to Whiting-Turner dated April 13, 2005 was preceded

by Mr. Freselone's presentation of the unpaid invoice to Whiting-Turner personnel in person before February 17, 2005, by Cherokee's letter to Mr. Natale faxed on March 2, 2005 and by the Miller Act notice from Cherokee's counsel to Whiting-Turner dated March 25, 2005. Fresolone Affidavit ¶¶ 11 and 22. ¶ 9 of Def.'s Statement requires the further clarification that Cherokee's Vice President Fresolone provided the necessary Miller Act claim notice to Whiting Turner before February 17, 2005, the ninetieth day following November 19, 2004, Cherokee's last day of work on the Combo Fire Project. Fresolone Affidavit ¶¶ 7-17, 20.

4. ¶ 11 of Def.'s Statement is disputed because it requires the clarification that Cherokee did not need to provide the required Miller Act notice to Whiting-Turner during January 2005, so long as Cherokee provided Whiting-Turner the required Miller Act notice on or before February 17, 2005, which notice requirement Cherokee satisfied as confirmed by the letter from Whiting-Turner to Capital City Concrete dated February 20, 2005. Plaintiff's Exhibit 2, Fresolone Affidavit ¶¶ 13-16.

5. ¶ 12 of Def.'s Statement is disputed because it requires the clarification that Cherokee did not need to provide notice to Whiting-Turner of any intention to "sue" Whiting-Turner at any time, so long as Cherokee provided Whiting-Turner the required Miller Act notice on or before February 17, 2005 and timely commenced suit within one year of the last day unpaid services were provided on the bonded Combo Fire Project. Cherokee provided Whiting-Turner the required Miller Act notice on or before February 17, 2005 as confirmed by the letter from Whiting-Turner to Capital City Concrete dated February 20, 2005. Plaintiff's Exhibit 2, Fresolone Affidavit ¶¶ 13-16.

6. ¶ 13 of Def.'s Statement is disputed because it requires the clarification that Cherokee did not need to provide any Miller Act notice to Whiting-Turner during March 2005,

so long as Cherokee provided Whiting-Turner the required Miller Act notice on or before February 17, 2005, which notice requirement Cherokee satisfied as confirmed by the letter from Whiting-Turner to Capital City Concrete dated February 20, 2005. Plaintiff's Exhibit 2, Fresolone Affidavit ¶¶ 13-16.

Respectfully submitted,

PLAINTIFF CHEROKEE CONSTRUCTION, INC.

By its Attorneys,

CHARLES S. KIRWAN & ASSOCIATES

/s/ Charles S. Kirwan
Charles S. Kirwan (Bar #4050)
204 King Philip Street
Providence, RI 02909
(401) 359-1166
(401) 272-6875 (fax)

CERTIFICATION

I hereby certify that on this 20th day of June 2007, I caused a true and complete copy of the foregoing to be transmitted via telecopier and mailed first class postage prepaid to counsel of record in this action: Christopher C. Whitney, Esq., Michael D. Williams, Esquire, LITTLE, MEDEIROS, KINDER, BULMAN & WHITNEY, PC, 72 Pine Street, Providence, RI 02903.

/s/ Charles S. Kirwan